```
                                                                    1

 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - - X
 3
        UNITED STATES OF AMERICA,    :   06-CR-568(JG)
 4                                   :
                                     :   U.S. Courthouse
 5                                   :   Brooklyn, New York
              -against-              :
 6                                   :   TRANSCRIPT OF
                                     :   PROCEEDINGS
 7                                   :
                                     :
 8      SHERMAN LEWIS,               :   January 29, 2015
                                     :   10:00 a.m.
 9           Defendant.               :
                                     :
10    - - - - - - - - - - - - - - X

11    BEFORE:
                    HONORABLE JOHN GLEESON, U.S.D.J.
12
      APPEARANCES:
13
      For the Government:     ROBERT L. CAPERS, ESQ.
14                            United States Attorney
                              271 Cadman Plaza East
15                            Brooklyn, New York 11201
                              BY:  PAUL SCOTTI, ESQ.
16                                 Assistant U.S. Attorney

17

18    For the Defendant:      FEDERAL DEFENDERS OF NEW YORK, INC.
                              BY:  MICHAEL SCHNEIDER, ESQ.
19

20

21
      Court Reporter:         Holly Driscoll, CSR
22                            Official Court Reporter
                              225 Cadman Plaza East
23                            Brooklyn, New York 11201
                              (718) 613-2274
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by Computer-Assisted Transcript.
```

1          THE CLERK:  United States versus Sherman Lewis.
2   Counsel, please come forward.
3          THE COURT:  Good morning.
4          PROBATION OFFICER:  Good morning.
5          MR. SCHNEIDER:  Good morning.
6          MR. SCOTTI:  Good morning.
7          THE COURT:  Good morning, Mr. Lewis.
8          THE DEFENDANT:  Good morning.
9          THE COURT:  State your appearances please,
10  gentlemen.
11         MR. SCOTTI:  Paul Scotti for the United States.
12  Good morning, Your Honor.
13         THE COURT:  Good morning.
14         PROBATION OFFICER:  Steve Scherzer for
15  U.S. Probation.
16         MR. SCHNEIDER:  Federal Defenders by Michael
17  Schneider for Mr. Lewis.  Good morning.
18         THE COURT:  Good morning, everyone.
19         Will you be supervising Mr. Lewis, have you
20  inherited this case?
21         PROBATION OFFICER:  Not necessarily, he just goes
22  into the pool if he comes out.
23         THE COURT:  Okay.
24         MR. SCHNEIDER:  When he comes out.
25         THE COURT:  He could use you.

1           PROBATION OFFICER:  Famous last words.
2           THE COURT:  All right.  We're here for a sentencing
3  on the plea of guilty to violating supervision by possessing a
4  firearm while a convicted felon.
5           MR. SCHNEIDER:  Yes.
6           THE COURT:  Are you ready to proceed?  I got your
7  letter, I got the government's letter.  I take it you've each
8  seen each other's letter.
9           MR. SCHNEIDER:  Yes, and we're ready to proceed.
10          THE COURT:  Go ahead.
11          MR. SCHNEIDER:  I don't want to belabor the point in
12 my letter but Mr. Lewis, as I said last time he was sentenced
13 before this Court, faces certain emotional and cognitive
14 issues that were outlined in the report I provided to the
15 Court in 2006, 2007.  In my mind that means that Mr. Lewis to
16 make a go of it in society is going to need at least at the
17 beginning some supervision and some sort of more intense
18 supervision than what happened here, and I don't blame
19 Probation for that.  What happened was is he had a pending
20 state case which was really nothing but they were unwilling to
21 bring him to appear in state court before his federal sentence
22 was finished.  That meant he couldn't go to a halfway house
23 because he had a detainer.  So, when he was released from his
24 federal sentence, I took him to Schemerhorn Street, he was
25 released, he got time served, whatever happened, and then he

4

1  was out and on probation.
2           THE COURT: That is the un-sentenced case that
3  resulted in the drop of his base offense level from 24 to 20.
4           MR. SCHNEIDER: That's right, that's correct.
5           THE COURT: Okay.
6           MR. SCHNEIDER: And then he was released on whatever
7  they decided to do then.
8           THE COURT: Right.
9           MR. SCHNEIDER: So, in my mind, Mr. Lewis with the
10 challenges he faces certainly could have used the time in a
11 halfway house to his benefit to sort of reintegrate into
12 society, hope to find a job and things like that. So, that's
13 not an excuse for possessing a firearm but I think going
14 forward that would be appropriate, that he gets that sort of
15 supervision to sort of get on the right track.
16          So, I understand Probation and the government's
17 position. In my mind, whatever portion of the sentence that
18 is retribution or punishment should take into account the fact
19 that he's done five years in state prison for the crime he
20 committed and any incremental time that should be added to
21 that, I don't think it should be near two years.
22          THE COURT: Okay. Whatever happened to that old
23 case that involved the homicide of his daughter, did the case
24 ever get --
25          MR. SCHNEIDER: Do you know what happened with that

1  guy in Pico, did that guy ever get arrested?
2          THE DEFENDANT:  No.
3          MR. SCHNEIDER:  No case was made.
4          THE COURT:  All right.
5          Mr. Lewis, you have a right to speak before sentence
6  is imposed.  Is there anything you want to say?
7          THE DEFENDANT:  No, sir.
8          THE COURT:  Okay.
9          Mr. Scotti.
10         MR. SCOTTI:  Thank you, Your Honor.
11         Your Honor, again, I'll be very brief, Judge, but
12 there's just a couple of things I do want to address; one,
13 as the Court is aware, the defendant was released on his
14 federal case, which was a felon in possession, and placed on
15 supervised release on March 4th, 2011.  As the Court is also
16 aware, it was June 1st, 2011 when he was rearrested and he was
17 rearrested in possession of a gun.  Not only was he in
18 possession of a gun but just a day earlier he had used the gun
19 in the commission of a robbery.
20         Now, the underlying facts of that were that he used
21 the gun and placed it to the victim's neck and threatened him
22 to get all of his belongings.  There was some sort of struggle
23 and none of the belongings were taken.
24         Now, also the last time we were here the defendant
25 disputed the facts of the attempted robbery and that's why we

1  have him pleading now to possession of the gun.

2              Judge, he pled guilty to the attempted robbery in
3  Brooklyn.  I know he gave reasons why he did to benefit
4  himself at the time.  So, either he lied to the judge in
5  Brooklyn or he's now lying to the Court now to try to help
6  himself here, although it really doesn't have an effect either
7  way here which one he's charged with.  But at the end of the
8  day, Judge, it doesn't really matter, it's about whether the
9  Court can trust that this defendant if he was out and was in a
10 halfway house or was on supervised release would try to
11 rehabilitate himself, would try to better himself to be a
12 productive member of the community and understanding that he
13 does have these issues that need to be addressed with the
14 track record that he has with his prior criminal history where
15 he's been on probation before which he was violated on, he's
16 been on parole before which he was violated on, I don't think
17 that he -- I mean -- let me take that back.  He has not earned
18 the right of the Court's trust to not be incarcerated at this
19 point and to not suffer the maximum penalty that is allowable
20 under law which is the two years imprisonment with the one
21 year post-release -- supervised release, I'm sorry, Judge, and
22 all of the programs and the rehabilitative assets at
23 Probation's disposal will still be available to the defendant
24 after the two years of incarceration, but at this point at
25 this time given the track record of the defendant, how quickly

1  he violated after being released in 2011 and the seriousness
2  of that violation, it's the government's recommendation,
3  joining Probation, that the Court impose the maximum penalty
4  here, 24 months in prison with one year supervised release.
5          THE COURT:  Okay, thank you.
6          MR. SCOTTI:  Thank you.
7          THE COURT:  Anything you want to add, Steve?
8          PROBATION OFFICER:  It's difficult because I've
9  never met Mr. Lewis, I didn't supervise Mr. Lewis, so I have
10 the same facts everyone else has.  It is a disturbing pattern.
11 It's not -- we're not speaking about addiction or mental
12 health issues that I'm aware of, although there may be.  It is
13 a pattern of possessing a weapon which is disturbing but he's
14 paying a heavy price for it.  I would say five years is a
15 heavy price and at a certain point I would defer to the Court
16 what punishment is appropriate.  But I do think in
17 transitioning, what Mr. Snide said, transitioning to the
18 halfway house is important, so if Your Honor wanted to
19 consider maybe less jail time, if it is something you're
20 considering, and make a special condition that he begins his
21 term with three or four months in the halfway house because if
22 you give any jail time and it's consecutive, depending on how
23 much it is, there's no guarantee he would transition out to a
24 halfway house depending on the length so he might again be
25 directly released to the streets.

1   THE COURT:  Got it.  Okay.  Thanks.
2   Anything you want to add?
3   MR. SCHNEIDER:  No.  I agree that that -- my
4   application, if it wasn't clear, would be for halfway house as
5   a condition of supervision, not relying on the BOP to put him
6   there.
7   THE COURT:  All right.  You know, the earlier case
8   was before me obviously so I have a more long-term view of
9   Mr. Lewis certainly than you do, Mr. Scotti.
10  MR. SCOTTI:  Certainly, Judge.
11  THE COURT:  And you know he is where he is and he
12  has to be dealt with appropriately but I can't ignore where he
13  came from, you know, his mother was 15 when he was born,
14  wasn't available to him.  His father, near as I can tell, was
15  17 when Mr. Lewis was born.  His dad was in jail by the time
16  this defendant was five.  There's mental illness in his
17  family, there's substance abuse rampant in his family.  There
18  was a raging substance abuse problem in Mr. Lewis himself,
19  abusing alcohol by 11, using heroin on a daily basis until he
20  was arrested on the first case before me.  He was robbed at
21  gunpoint twice with a gun held to his head at age 17; reading
22  issues, behavioral issues, and there was a point -- you know,
23  hope springs eternal in everyone even retroactively -- I think
24  there was a turning point, he's 18 years old and he violates
25  probation in one of his earlier cases -- it looks like all of

9

1  those cases arose out of his substance abuse to me -- when
2  more positive steps could have been taken, but if I am reading
3  this record correctly, he got 11 months on a violation.
4          Where did you do that 11 months, Rikers?
5          THE DEFENDANT:  Yes, sir.
6          THE COURT:  An 18-year old kid with a substance
7  abuse problem gets 11 months in Rikers instead of the kind of
8  help that might have sent him down a different path.
9  Compounding these mental health issues is the murder of his
10 infant daughter he believes -- it doesn't really matter if
11 it's right or who did it -- he believes by a man that his
12 daughter's mother was seeing at the time.
13         His deficits, I'm taking this from Dr. Drob's report
14 in connection with the original sentencing; deficits in
15 cognitive functioning, emotional disorder, pronounced learning
16 disability.
17         Mr. Lewis has committed crimes and he'll pay for
18 them but, as systems, we could have done better by him and, as
19 I say, hope springs eternal in me.  I was struck by the second
20 to last paragraph in Dr. Drob's report:  "While Mr. Lewis is
21 angry and resentful, he also has a needy, caring side to his
22 personality that should enable him to forge a relationship
23 with a supportive and directive counselor."  God, this is
24 written so long ago.  He writes:  "At age 21 -- that's how old
25 he was when Dr. Drob wrote this report.  What are you now?

1  You're going to be 30 this year?
2           THE DEFENDANT:  Yes, sir.
3           THE COURT:  "At age 21 he is desperately in need of
4  such a guiding individual to help integrate the various
5  aspects of the rehabilitation he needs if he is to have a
6  reasonable outcome upon release from prison."
7           To some extent Mr. Lewis has failed himself and his
8  community but it's also the case that we failed him, we didn't
9  provide him that guidance he needs, and I'll defer to what
10 Probation does when he gets out but I meant what I said
11 earlier, he needs someone like you when he gets out,
12 Mr. Scherzer.
13          You have to stay away from guns given your history
14 of substance abuse issues, mental health issues, the fact that
15 you're a convicted felon and the fact that guns in the hands
16 of upstanding folks are a really bad idea in this city even,
17 you've just got to stay away from guns.
18          If I recall correctly, in the underlying case you
19 were holding somebody else's gun for them.
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  Here there's -- I don't intend to get
22 into this, it's a .22-caliber handgun, correct?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  You have to stay away from guns.  If you
25 come back, I want Mr. Scotti to make a note in the file, that

1  if Mr. Lewis comes back before me on his next bout, his next
2  period of supervision on a violation that involves his
3  possession of a weapon, it's going to take -- Mr. Schneider is
4  a very good lawyer but I don't think he's going to be able to
5  persuade me not to incarcerate you for as long as I can.  This
6  gun in the mix is just the worst possible thing.
7            So, stay away from guns.  I'm not going to give you
8  the maximum sentence.  I respectfully disagree with
9  Mr. Scotti.  I'm not going to give you the maximum sentence.
10 There are mitigating and sympathy evoking features to your mix
11 of facts here, so I'm not going to give you all that time.
12 And I want you on supervision.  You can turn your life around,
13 you need help, but it's going to be basically a zero tolerance
14 policy on guns next time around.
15           I'm just going to max you out, terminate the case,
16 understood?
17           THE DEFENDANT:  Yes, sir.
18           THE COURT:  The sentence is affected by the fact
19 that he's done five years for this conduct in the state.  He
20 does need to be punished for his violation of his federal
21 supervision and he will be.  I'm revoking the term of
22 supervision and remanding him to the custody of the Attorney
23 General for a period of nine months to run consecutive to the
24 undischarged state sentence.  At the far end of that nine
25 month period of incarceration Mr. Lewis will go back on

1  supervision -- how long can I put him on supervision for?
2          PROBATION OFFICER:  Two years and three months.
3          THE COURT:  For two years and three months with
4  special conditions, the special conditions will be the same as
5  those that I imposed originally which is mental health
6  treatment as directed by his supervising officer, substance
7  abuse treatment as directed by the supervising officer.  I
8  mean that to include inpatient or outpatient treatment but I
9  notice there's a recent decision from the circuit so --
10         MR. SCHNEIDER:  That's --
11         THE COURT:  What?
12         MR. SCHNEIDER:  That's right, that's my case and I
13 don't know how that's supposed to work but I guess you can
14 say --
15         THE COURT:  Come to me.
16         MR. SCHNEIDER:  Right.
17         THE COURT:  The supervising officer should come to
18 the Court to request my imprimatur on an inpatient drug
19 treatment regimen because of a liberty interest implicated by
20 that, that's the way I read that case.
21         MR. SCHNEIDER:  Yes.
22         THE COURT:  I'm imposing a condition of halfway
23 house placement upon his release from the period of custody
24 and that will be four months duration.  Is that what you
25 recommend, Steve?

1              PROBATION OFFICER:  I think that's fair.
2              THE COURT:  And I'm reimposing a search condition
3    that was in existence at the time originally, I imposed it at
4    the time he was sentenced.
5              Mr. Lewis.
6              THE DEFENDANT:  Yes, sir.
7              THE COURT:  This halfway house placement and the
8    following one year and eleven months of supervision is very
9    much designed to help you help yourself.  It's not too late.
10   Whether it's Officer Scherzer or one of his colleagues, there
11   will be someone who is experienced in helping people with your
12   constellation of problems and your history get back on track,
13   avoid any relapse into substance abuse, deal with your mental
14   health issues, help you find work maybe.  It really is our
15   system at its best.  I meant what I said earlier, I think
16   there's a chance.  I don't know what happened when you were
17   18, what did you have a dirty urine and then you did
18   eleven months in Rikers?
19             THE DEFENDANT:  Yes, sir.
20             THE COURT:  I meant what I said earlier, I think
21   supervision is the best part of our system, it's the most
22   enlightened part of our system.  It's not intended -- it's got
23   to keep the community safe but also one way to keep the
24   community safer is to keep you from committing more crimes
25   using drugs.  I want you to do the best you can to bring as

14

1  positive an attitude as you can to that.
2          I need to punish you I think for your violation of
3  supervision by possessing a weapon, that's what the nine
4  months is about.  The rest of it seems like punishment to you
5  but it is designed to help you, do you understand?
6          THE DEFENDANT:  Yes, sir.
7          THE COURT:  I want you to try to believe that.  And
8  bring a positive attitude to the task.
9          I'd like you to convey to your colleagues,
10 Mr. Scherzer, I don't want to get in the way of the
11 supervision but I want the supervising officer to contact me
12 upon Mr. Lewis's release from prison so I can discuss with
13 whoever supervises him the prospect of maybe having him come
14 in, meet with me on a monthly basis as his supervision goes
15 forward.  I want to try to keep my finger on the pulse of the
16 case.
17         PROBATION OFFICER:  Yes, Your Honor.
18         THE COURT:  Please.  The rest of the violation
19 allegations are dismissed on the government's motion, correct?
20         MR. SCOTTI:  Yes, Your Honor.
21         THE COURT:  What else?
22         MR. SCHNEIDER:  Would the Court consider
23 recommending to the Bureau of Prisons that Mr. Lewis be
24 designated someplace close to New York City, Otisville if
25 possible?

1  THE COURT: Granted. You want me to specifically
2  mention FCI Otisville?
3  MR. SCHNEIDER: Yes.
4  THE COURT: Yes. Anything else?
5  MR. SCHNEIDER: No.
6  THE COURT: Thank you. Have a good day.
7  MR. SCOTTI: Thank you, Judge.
8  (Time noted: 11:00 a.m.)
9  (End of proceedings.)